Filed 3/15/13  P. v. Russell CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LARRY LEE RUSSELL, JR.,<br><br>        Defendant and Appellant. | A134501<br><br>(Contra Costa County<br>Super. Ct. No. 05-111362-0) |

Appellant Larry Lee Russell, Jr. was convicted by jury of possession of cocaine base for sale (Health & Saf. Code, § 11351.5).  The trial court found that Russell had been convicted of the same crime on three prior occasions (Health & Saf. Code, § 11370.2) and had served two prior prison terms (Pen. Code, § 667.5, subd. (b)).[1] Russell was sentenced to a 10-year term, the first eight years to be served in county jail and the remaining two years to be served on supervised community release.  Russell argues that the trial court erred in admitting evidence of two prior convictions, failing to strike certain sentence enhancements, and ordering payment of attorney, drug program, and criminal assessment fees.  We conclude that the attorney fees order must be reversed and that the judgment must be modified, but we otherwise affirm.

##### I.    FACTUAL AND PROCEDURAL BACKGROUND

Russell was charged, by information, with possession of cocaine base for sale on January 12, 2011 (Health & Saf. Code, § 11351.5; count one), possession of cocaine base

---

[1] Unless otherwise noted, all further statutory references are to the Penal Code.

for sale on March 18, 2011 (Health & Saf. Code, § 11351.5; count two), and possession of hydrocodone for sale on March 18, 2011 (Health & Saf. Code, § 11351; count three). The information also alleged that Russell was ineligible for probation (§§ 1203, subd. (e)(4), 1203.07, subd. (a)(11)) and subject to sentence enhancements because he had been convicted, on three prior occasions, for possession of cocaine base for sale (Health & Saf. Code, § 11370.2) and had served two prior prison terms (§ 667.5, subd. (b)). Russell entered a plea of "not guilty."

We need only briefly summarize the evidence presented at trial. Richmond Police Officer Joseph Pineda testified that, on January 12, 2011, at 1:42 p.m., he responded to a disturbance call. Pineda detained Russell to investigate the disturbance. As Russell was being patsearched, Pineda felt small rocks in Russell's front pocket.

Pineda removed a plastic baggie containing 17 to 20 rocks, each of which were individually tied in plastic. No pipe was found. Based on his drug training, Pineda concluded that the rocks were cocaine base. Russell was arrested and spontaneously said: " 'Come on, man, can't I just make the dope go away? Christmas spirit. Give me a break.' " A chemical analysis of a random selection from the 17 recovered rocks indicated that the samples contained cocaine base. The remaining rocks appeared similar in texture and appearance to the tested rocks. Pineda, based in part on the amount and the manner in which it was packaged, opined that the cocaine base was possessed for sale.

Richmond Police Detective Thomas Hauschild testified that, on March 18, 2011, he searched a residence in Richmond. Russell was getting out of bed in the master bedroom. A woman was also present in the master bedroom. On a nightstand in the bedroom, Hauschild found two pill bottles containing hydrocodone, a plate with a razor blade and residue from a white, chunky substance, and a shoebox containing a razor blade, a digital scale, empty plastic bags, and plastic bags containing cocaine base.

Closing argument made clear that, with respect to count one, Russell only disputed his intent to sell the cocaine base. With respect to counts two and three, on the other hand, Russell contended that the prosecution had not met its burden to prove his possession of a controlled substance. After deliberating for approximately one day, the

2

jury found Russell guilty of count one and not guilty of count three. The jury was unable to reach a verdict as to count two or the lesser included offense to count three.

After Russell waived his right to a jury trial on the prior convictions, the court found the prior conviction and probation ineligibility allegations true. At sentencing, the court imposed a total term of 10 years, comprised of a four-year term on count one, plus six years for two of the prior conviction enhancements (Health & Saf. Code, § 11370.2, subd. (a)). The third prior conviction enhancement was stayed, purportedly pursuant to section 654. Although no disposition of the section 667.5, subdivision (b) prior prison term enhancements is included in the abstract of judgment, the trial court stated, during the sentencing hearing, that they were stayed, purportedly pursuant to section 654. Pursuant to section 1170, subdivision (h), Russell was to serve the first eight years of his sentence in county jail and the remaining two years on supervised community release. Among other fines and fees, Russell was ordered to pay $500 in attorney fees, a $570 drug program fee, and a $564 criminal assessment fee. Russell filed a timely notice of appeal.

## II. DISCUSSION

On appeal, Russell argues that the trial court erred in: (1) admitting evidence of two of his prior convictions; (2) staying, instead of striking, sentence enhancements relating to his prior drug convictions and prison terms; (3) imposing an award of attorney fees, pursuant to section 987.8, and a drug program fee, pursuant to Health and Safety Code section 11372.7, subdivision (a), without considering Russell's ability to pay; and (4) ordering Russell to pay a criminal assessment fee without considering any evidence of actual costs or ability to pay.

A.     *Evidence of Prior Crimes*

First, Russell contends that his conviction must be reversed because the trial court abused its discretion by admitting, under Evidence Code section 1101, subdivision (b),

3

evidence underlying two prior drug offense convictions. He contends that the evidence was irrelevant or unduly prejudicial (Evid. Code, § 352).[2]

" 'Rulings made under [Evidence Code sections 1101 and 352] are reviewed for an abuse of discretion. [Citation.]' [Citation.] 'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." [Citation.]' [Citation.]" (*People v. Foster* (2010) 50 Cal.4th 1301, 1328.)

1.    *Background*

Prior to trial, the prosecution gave notice that it intended to introduce evidence of five of Russell's prior drug convictions, pursuant to Evidence Code section 1101, subdivision (b), to prove knowledge of the nature of the drugs and intent to sell. Russell's trial counsel moved to exclude the evidence. The trial court ruled that the evidence underlying two of the convictions (Mar. 23, 2004, & Feb. 27, 2009) was relevant and more probative than prejudicial (Evid. Code, § 352). With respect to the 2004 conviction, the trial court ruled that it would allow evidence of Russell's conduct

---

[2] Evidence Code section 1101, subdivision (a), provides: "Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." But, Evidence Code section 1101, subdivision (b), provides: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

4

and his conviction. With respect to the 2009 conviction, the trial court ruled that it would allow "the evidence behind the arrest."

Accordingly, at trial, the prosecution presented evidence that, on October 29, 2008, a Richmond police officer saw Russell drop a bag containing rocks of cocaine base. The prosecution also presented evidence that Russell had been convicted, by virtue of his guilty plea, of a 2003 charge of possessing a controlled substance for sale. In that instance, Russell was detained, in San Francisco, and found to be carrying a large plastic bag containing individually-wrapped rocks of cocaine base. Russell did not have a pipe or show any signs of being under the influence.

2.    *Analysis*

" 'Evidence that a defendant has committed crimes other than those currently charged is not admissible to prove that the defendant is a person of bad character or has a criminal disposition; but evidence of uncharged crimes is admissible to prove, among other things, the identity of the perpetrator of the charged crimes, the existence of a common design or plan, or the intent with which the perpetrator acted in the commission of the charged crimes. (Evid. Code, § 1101.) Evidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent. [Citation.]' [Citation.]" (*People v. Foster, supra,* 50 Cal.4th at p. 1328.) " 'The admissibility of other crimes evidence depends on (1) the materiality of the facts sought to be proved, (2) the tendency of the uncharged crimes to prove those facts, and (3) the existence of any rule or policy requiring exclusion of the evidence.' [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 22; accord, *People v. Nible* (1988) 200 Cal.App.3d 838, 847.)

Russell contends the evidence of his prior convictions was irrelevant because they "were remote and factually inapposite to the facts underlying this case." His contention regarding remoteness need not delay us long. The passage of time does not necessarily reduce a previous crime's probative value (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405, superseded by statute on other grounds, as stated in *People v. Robertson* (2012)

5

208 Cal.App.4th 965, 991), especially when the passage of time is largely explained, as it is here, by a defendant's incarceration for major portions of the periods between the offenses. (See *People v. Foster, supra,* 50 Cal.4th at p. 1330; *People v. Lewis* (2009) 46 Cal.4th 1255, 1287; *People v. Davis* (2009) 46 Cal.4th 539, 602.)

The record belies Russell's further contention that the prior convictions were factually inapposite. He was convicted in the instant proceeding of possession of cocaine base for sale. Accordingly, the prosecution was charged with proving, among other things, that Russell possessed cocaine base with an intent to sell it. (*In re Christopher B.* (1990) 219 Cal.App.3d 455, 465–467.) "[I]f the other crime sheds great light on the defendant's intent at the time he committed that offense it may lead to a logical inference of his intent at the time he committed the charged offense if the circumstances of the two crimes are substantially similar even though not distinctive. [Citations.]" (*People v. Nible, supra,* 200 Cal.App.3d at pp. 848–849.) Our Supreme Court has "long recognized 'that if a person acts similarly in similar situations, he probably harbors the same intent in each instance' [citations], and that such prior conduct may be relevant circumstantial evidence of the actor's most recent intent. The inference to be drawn is not that the actor is *disposed* to commit such acts; instead, the inference to be drawn is that, in light of the first event, the actor, at the time of the second event, must have had the intent attributed to him by the prosecution. [Citations.]" (*People v. Robbins* (1988) 45 Cal.3d 867, 879.)

The facts underlying the prior convictions were sufficiently similar to prove intent. The "least degree of similarity" between the prior act and the charged offense is required for the prior act to be admissible to prove intent: "In order to be admissible to prove intent, the uncharged conduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." [Citations.]' [Citation.]" (*People v. Ewoldt, supra,* 7 Cal.4th at p. 402.) Here, Russell was arrested in different locations in all three instances. But, on all three occasions, Russell possessed multiple individual rocks of cocaine base inside a bag. Thus, if the jury believed he had an intent to sell cocaine base in 2003 and 2008, the evidence was relevant to whether

6

Russell possessed cocaine base on January 12, 2011, with the intent to sell it. (Evid. Code, § 1101, subd. (b).)

"In prosecutions for drug offenses, evidence of prior drug use and prior drug convictions is generally admissible under Evidence Code section 1101, subdivision (b), to establish that the drugs were possessed for sale rather than for personal use and to prove knowledge of the narcotic nature of the drugs. [Citation.]" (*People v. Williams* (2009) 170 Cal.App.4th 587, 607; accord, *People v. Pijal* (1973) 33 Cal.App.3d 682, 691.) Russell seeks to escape this conclusion by arguing that neither element was seriously disputed in this case. He relies on the fact that Pineda testified that the packaging was consistent with possession for sale, rather than possession for personal use. But, this evidence does not mean that intent was not contested or necessarily make the prior conviction evidence cumulative. Russell's plea of not guilty placed all the elements of the charged crime at issue. (*People v. Lindberg, supra,* 45 Cal.4th at p. 23.) Furthermore, Russell never conceded that any rocks of cocaine he possessed, on January 12, 2011, were possessed for sale. In fact, during his closing argument, Russell's trial counsel specifically argued that "there certainly isn't any evidence beyond a reasonable doubt that [the cocaine base] was possessed for sales." The trial court did not abuse its discretion in concluding that the prior crimes evidence was relevant to prove Russell's intent. Accordingly, we need not decide whether it was also admissible to prove knowledge of the nature of the substance.

Next, Russell focuses his argument on Evidence Code section 352 and asserts that the details of his prior offenses should have been excluded as unduly prejudicial. "When evidence of prior offenses is presented to a jury, there is inherent danger of prejudice to an accused. Therefore, such evidence should be received with caution and admitted only when its probative value outweighs its prejudicial effect." (*People v. Evers* (1992) 10 Cal.App.4th 588, 599; accord, *People v. Tapia* (1994) 25 Cal.App.4th 984, 1021.)

In assessing prejudice, we must remember that "[t]he prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[A]ll

7

evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. . . .' [Citation.]" (*People v. Karis* (1988) 46 Cal.3d 612, 638.)

The trial court did not abuse its discretion when it concluded that the probative value of Russell's prior criminal conduct was not outweighed by its risk for undue prejudice. The evidence was highly probative on the key disputed issue and not inflammatory. Furthermore, the jury was repeatedly admonished not to use the prior conviction as evidence of Russell's criminal propensity. The record gives us no reason to suspect that the jury disregarded the court's instructions. To the contrary, after being reinstructed that it could not consider the prior convictions for propensity purposes, the jury found Russell not guilty on count three and deadlocked on count two.

B.      *Stay of Enhancements*

Next, Russell argues that the trial court erred by staying, rather than striking, the prior prison term enhancements and the third prior conviction enhancement. The trial court purported to stay the enhancements pursuant to section 654.[3] However, section 654 does not preclude multiple use of prior convictions to impose status enhancements, such as those at issue here. (*People v. Coronado* (1995) 12 Cal.4th 145, 158–159.) Furthermore, a prior drug conviction resulting in a prison term can serve as the basis for separate, consecutive enhancements under both Health and Safety Code section 11370.2 *and* under section 667.5, subdivision (b). (*People v. Gokey* (1998) 62 Cal.App.4th 932, 933–934, 937 [Health & Saf. Code, § 11370.2 "specifically states that the enhancement for a prior drug conviction is to be imposed 'in addition to any other punishment authorized by law, including Section 667.5 of the Penal Code' "].)

---

[3] In relevant part, section 654 provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." (§ 654, subd. (a).)

8

Nonetheless, the People agree that the trial court's order constituted an unauthorized sentence. (See *People v. Langston* (2004) 33 Cal.4th 1237, 1241 ["[o]nce the prior prison term is found true within the meaning of section 667.5[, subd. ](b), the trial court may not stay the one-year enhancement, which is mandatory unless stricken"]; *People v. McCray* (2006) 144 Cal.App.4th 258, 267 [trial court exceeded its jurisdiction in staying enhancements under § 667.5, subd. (b), and Health & Saf. Code, § 11370.2, subd. (a)]; *People v. Haykel* (2002) 96 Cal.App.4th 146, 151 [" '[u]nless a statute says otherwise, an enhancement may be imposed or stricken, but . . . may not be *stayed*; to do so is an illegal sentence' "]; *People v. Bradley* (1998) 64 Cal.App.4th 386, 391 ["failure to impose or strike an enhancement is a legally unauthorized sentence subject to correction for the first time on appeal"]; *People v. Jones* (1992) 8 Cal.App.4th 756, 758 ["an enhancement, if not imposed, must be stricken"].) Accordingly, as requested by the People, we will modify the judgment to strike the subject enhancements.

C. *Ability to Pay Attorney Fees*

Next, Russell asserts that the trial court erred by ordering him to pay $500 in attorney fees without considering his ability to pay. We address Russell's argument notwithstanding his failure to object at the sentencing hearing. (See *People v. Pacheco* (2010) 187 Cal.App.4th 1392, 1397, 1402 (*Pacheco*) [objection to order to reimburse attorney fees as a condition of probation was not forfeited by defendant's failure to raise it below because challenge was to evidentiary basis]; *People v. Viray* (2005) 134 Cal.App.4th 1186, 1214 ["unless the defendant has secured a new, independent attorney when such an order is made, she is effectively *unrepresented* at that time, and cannot be vicariously charged with her erstwhile counsel's failure to object to an order reimbursing his own fees"]; *People v. Lopez* (2005) 129 Cal.App.4th 1508, 1537.)

Section 987.8, subdivision (b), provides: "In any case in which a defendant is provided legal assistance, either through the public defender or private counsel appointed by the court, upon conclusion of the criminal proceedings in the trial court, or upon the withdrawal of the public defender or appointed private counsel, the court may, after notice and a hearing, make a determination of the *present ability* of the defendant to pay

9

all or a portion of the cost thereof.  The court may, in its discretion, hold one such additional hearing within six months of the conclusion of the criminal proceedings.  *The court may, in its discretion, order the defendant to appear before a county officer designated by the court to make an inquiry into the ability of the defendant to pay all or a portion of the legal assistance provided.*"  (Italics added.)  Section 987.8, subdivision (d), provides:  "If the defendant, after having been ordered to appear before a county officer, has been given proper notice and fails to appear before a county officer within 20 working days, the county officer shall recommend to the court that the full cost of the legal assistance shall be ordered to be paid by the defendant.  The notice to the defendant shall contain all of the following: [¶] (1) A statement of the cost of the legal assistance provided to the defendant as determined by the court. [¶] (2) The defendant's procedural rights under this section. [¶] (3) The time limit within which the defendant's response is required. [¶] (4) A warning that if the defendant fails to appear before the designated officer, the officer will recommend that the court order the defendant to pay the full cost of the legal assistance provided to him or her."  (Italics added.)  Section 987.8, subdivision (e), provides, in relevant part:  "*If the court determines that the defendant has the present ability to pay all or a part of the cost*, the court shall set the amount to be reimbursed and order the defendant to pay the sum to the county in the manner in which the court believes reasonable and compatible with the defendant's financial ability.  Failure of a defendant who is not in custody to appear after due notice is a sufficient basis for an order directing the defendant to pay the full cost of the legal assistance determined by the court.  The order to pay all or a part of the costs may be enforced in the manner provided for enforcement of money judgments generally but may not be enforced by contempt."  (Italics added.)

The finding of ability to pay may be express or implied, so long as it is supported by substantial evidence. (*Pacheco, supra,* 187 Cal.App.4th at p. 1400; *People v. Lopez, supra,* 129 Cal.App.4th at p. 1537; *People v. Phillips* (1994) 25 Cal.App.4th 62, 76.)  On substantial evidence review, we determine only whether, upon review of the entire record, there is substantial evidence of solid value, contradicted or uncontradicted, to

10

support the judgment below and will include every fact that can reasonably be deduced from the evidence. (*People v. Phillips,* at pp. 71–72.)

In *Pacheco*, *supra,* 187 Cal.App.4th 1392, the trial court imposed attorney fees, booking fees, probation supervision fees, and court security fees as conditions of the defendant's probation. But the court made no finding of the defendant's ability to pay. Instead, with respect to attorney fees, the trial court referred the matter to the Santa Clara County Department of Revenue for a determination of ability to pay. (*Id.* at pp. 1396–1399, 1401–1402.) On appeal, the reviewing court concluded that the referral was inadequate, because it "shed[] no light on the issue" of the defendant's ability to pay. (*Id.* at p. 1398.) The court explained: "[T]he order to pay attorney fees was not conditioned on or subject to whatever determination the department of revenue might have made. Moreover, although section 987.8, subdivision (b) provides that a county officer designated by the court may make an inquiry into a defendant's ability to pay attorney fees, it is the *court* that ultimately must make the ability to pay determination. Thus, this referral alone does not meet the statutory directive. [¶] . . . [¶] [T]here is no evidence in the record of Pacheco's assets, employment status or other means of income from which the court could have made a determination of his ability to pay attorney fees as provided by section 987.8. There is thus no required finding of Pacheco's ability to pay attorney fees, either express or implied, and, for this reason, the attorney fee order cannot stand." (*Id.* at pp. 1398–1399.)

Just as in *Pacheco*, Russell was also ordered to report to a county revenue office for consideration of his ability to pay.[4] The People argue that this referral means that

---

[4] The court's written order, which is a preprinted form entitled "Payment of Fines and Fees," provides: "[A] county officer will interview you to determine if you are able to pay all or part of the services of the attorney appointed by the Court to handle your case. If the Office of Revenue Collection finds that you are able to pay a certain amount, and you do not agree, you have the right to a hearing in this Court to decide what amount, if any, you must pay. At the hearing you will have the right to: (i) be heard in person, (ii) present witnesses and other documentary evidence, (iii) confront and cross-examine adverse witnesses, and (iv) have the evidence against you disclosed to you. You are also

11

Russell's argument is not ripe. But, the trial court did not order Russell to pay $500 in attorney fees only after a determination by the Office of Revenue Collection of his ability to pay. Nor did the trial court otherwise indicate that the attorney fees order was conditioned upon such a finding. Section 987.8, subdivision (e), makes clear that the determination that a defendant has the present ability to pay is a prerequisite to entry of an order requiring payment of attorney fees. Because the trial court entered an unconditional attorney fees order, we must consider whether substantial evidence supports an express or implied finding that Russell has the ability to pay.

Here, the trial court did not make an express finding of Russell's ability to pay, nor was there any discussion of the issue at sentencing. And, even if we were to imply a finding by the court of ability to pay, such a finding is not supported by substantial evidence. "Ability to pay" means "the overall capability" of the defendant to reimburse all or a portion of the defense costs. (§ 987.8, subd. (g)(2).) Ability to pay requires consideration of the defendant's financial position at the time of the hearing, his or her "reasonably discernible" financial position over the subsequent six months, including the likelihood of employment during that time, and "[a]ny other factor or factors which may bear upon the defendant's financial capability to reimburse the county." (§ 987.8, subds. (g)(2)(A)–(D).) An express finding of unusual circumstances is required when a defendant sentenced to state prison is ordered to pay attorney fees. (*People v. Lopez, supra,* 129 Cal.App.4th at p. 1537.) Otherwise, it is presumed that such a defendant does not have the present ability to pay. (§ 987.8, subd. (g)(2)(B).)

The probation report did indicate that Russell had been employed in the past. However, it also reported that Russell was not employed at the time of the offense and

entitled to have a copy of any written recommendation of the county officer and a written statement of any findings of the court. [¶] If you do not go to the Office of Revenue Collection, as ordered, you waive (give up) your right to a hearing, and the Court will enter a judgment against you, ordering you to pay for the services of your attorney." Russell signed the order, indicating that he "acknowledge[d] receipt of the above order and under[stood] that if [he did] not report as ordered, the court [would] enter a judgment against [him] . . . ."

had no assets. "The specific language of section 987.8 expressly requires a finding of *present ability* to pay for defense costs." (*People v. Nilsen* (1988) 199 Cal.App.3d 344, 350.) The fact that Russell may have been employed at some unspecified time in the past does not constitute substantial evidence of his present ability to pay even $500 in attorney fees. Furthermore, since the court may not consider a period beyond six months after the hearing in determining a defendant's ability to pay (§ 987.8, subd. (g)(2)(B)), Russell's eight-year jail term strongly suggests an inability to pay.

We conclude there was insufficient evidence before the trial court of Russell's present ability to pay attorney fees. Accordingly, we will reverse the attorney fees order and remand for a determination under section 987.8 of Russell's ability to pay.

D.    *Ability to Pay Drug Program Fee*

Next, Russell contends that the trial court erred by ordering him to pay a $570 drug program fee, pursuant to Health and Safety Code section 11372.7, without considering his ability to pay.

Health and Safety Code section 11372.7 provides, in relevant part: "(a) Except as otherwise provided in subdivision (b) or (e), each person who is convicted of a violation of this chapter shall pay a drug program fee in an amount not to exceed one hundred fifty dollars ($150) for each separate offense. The court shall increase the total fine, if necessary, to include this increment, which shall be in addition to any other penalty prescribed by law. [¶] (b) *The court shall determine whether or not the person who is convicted of a violation of this chapter has the ability to pay a drug program fee.* If the court determines that the person has the ability to pay, the court may set the amount to be paid and order the person to pay that sum to the county in a manner that the court believes is reasonable and compatible with the person's financial ability. In its determination of whether a person has the ability to pay, the court shall take into account the amount of any fine imposed upon that person and any amount that person has been ordered to pay in restitution. If the court determines that the person does not have the ability to pay a drug program fee, the person shall not be required to pay a drug program fee." (Italics added.)

13

This Division has previously observed: "[The Health and Safety Code section 11372.7 drug program fee] is mandatory unless the defendant is unable to pay." (*People v. Clark* (1992) 7 Cal.App.4th 1041, 1050.) But, an express finding regarding ability to pay is not required. (*People v. Martinez* (1998) 65 Cal.App.4th 1511, 1516.) When the record does not suggest otherwise, we will presume the trial court found the defendant had the ability to pay. (*People v. Clark,* at p. 1050; *People v. Burnett* (2004) 116 Cal.App.4th 257, 261–262.)

Russell argues that an implied finding of ability to pay cannot be supported here because, "due to his lengthy incarceration, Russell has no ability to secure employment and consequently, no earning capacity." In this context, however, we are not statutorily bound to consider only a defendant's present ability to pay. " '[A]bility to pay' a drug program fee does not require existing employment or cash on hand. Rather, a determination of ability to pay may be made based on the person's *ability to earn* where the person has no physical, mental or emotional impediment which precludes the person from finding and maintaining employment once his or her sentence is completed." (*People v. Staley* (1992) 10 Cal.App.4th 782, 783 (*Staley*).)

In *Staley, supra,* 10 Cal.App.4th 782, the defendant was sentenced to a term of four years, eight months in state prison. Nonetheless, the reviewing court rejected his argument that the trial court erred in imposing a drug program fee. (*Id.* at pp. 784–785.) The court reasoned: "In this case, defendant supported a $100 a day drug habit by selling methamphetamine. He had no other income and had not been employed since 1988 when he worked for four months at minimum wage. However, there is nothing in the record to suggest that defendant (who was 31 years old at the time of sentencing) is physically, mentally or emotionally unable to find and maintain productive employment once his sentence is completed. The trial court had an opportunity to observe defendant, and we presume the court discerned no such disabling characteristics. If there were any such latent impediments, defendant would be in the best position to know of and develop that information. Since he failed to object to imposition of the drug program fee or to request a hearing on his ability to pay, we assume there are no such impediments. . . . [¶] . . .

Accepting the sincerity of defendant's stated intention to mend his ways and to lead a productive life in the future, the trial court was entitled to conclude that defendant has the ability to satisfy this modest [$300] debt to society by fulfilling his goal of obtaining employment with his father *once he completes his sentence*. In other words, the record supports an implied determination of ability to pay. Hence, the trial court not did err in imposing the drug program fees." (*Id.* at p. 786, italics added.)

We do not see a reasoned basis to distinguish this case based on Russell's eight-year term, rather than the almost five-year term at issue in *Staley*. Like the defendant in *Staley,* Russell did not object to the drug program fee below or point out any impediments to earning an income in the future. The probation report did report that Russell was not employed at the time of the offense and that he had no assets. However, the record showed that he had been employed in the past. Russell himself states on appeal: "[I] will be in no position to pay such a fee *until* [*I am*] *released from custody* . . . ." (Italics added). Because Russell does not dispute his postrelease ability to pay and Health and Safety section 13727.7 requires nothing more, we conclude the trial court did not err in imposing the drug program fee.

E.     *Criminal Assessment Fee*

Finally, Russell contends that the trial court erred by ordering him to pay a $564 criminal assessment fee without any evidence to support the amount or his ability to pay. The People argue that Russell waived these objections to the fee by failing to raise them below. There is a conflict in the authority regarding whether the forfeiture doctrine applies in this context. (See *People v. Hodges* (1999) 70 Cal.App.4th 1348, 1357 [forfeiture doctrine applied]; *Pacheco, supra*, 187 Cal.App.4th at pp. 1397, 1400 [forfeiture doctrine inapplicable].) Our Supreme Court recently heard argument on the issue. (*People v. McCullough* (2011) 193 Cal.App.4th 864, review granted June 29, 2011, S192513.) At least until the Supreme Court rules on the matter, we will consider the merits.

"Government Code sections 29550, 29550.1, and 29550.2 govern fees for booking or otherwise processing arrested persons into a county jail. To some degree, they vary

15

based on the identity of the arresting agency. Arrests made by a 'city, special district, school district, community college district, college, university or other local arresting agency' are governed by Government Code sections 29550, subdivision (a)(1) and 29550.1. Arrests made by a county are governed by Government Code section 29550, subdivision (c) and those made by 'any governmental entity not specified in Section 29550 or 29550.1' are governed by Government Code section 29550.2, subdivision (a)." (*Pacheco, supra,* 187 Cal.App.4th at p. 1399, fn. 6.)

Here, the record indicates that the City of Richmond was the arresting agency and that Russell was detained in county jail. Thus, Government Code sections 29550.1 and 29550, subdivision (a)(1), apply. Government Code section 29550, subdivision (a)(1) provides, in relevant part: "[A] county may impose a fee *upon a city*, special district, school district, community college district, college, or university for reimbursement of county expenses incurred with respect to the booking or other processing of persons arrested by an employee of that city, special district, school district, community college district, college, or university, where the arrested persons are brought to the county jail for booking or detention. *The fee imposed by a county pursuant to this section shall not exceed the actual administrative costs* . . . incurred in booking or otherwise processing arrested persons. For the 2005-06 fiscal year and each fiscal year thereafter, the fee imposed by a county pursuant to this subdivision shall not exceed one-half of the actual administrative costs, including applicable overhead costs as permitted by federal Circular A-87 standards, as defined in subdivision (d), incurred in booking or otherwise processing arrested persons." (Italics added.) Under Government Code section 29550.1, the city may then recover from the arrested and convicted person the fee "imposed by a county."[5]

---

[5] Government Code section 29550.1 provides, in relevant part: "Any city . . . or other local arresting agency whose officer or agent arrests a person is entitled to recover any criminal justice administration fee imposed by a county from the arrested person if the person is convicted of any criminal offense related to the arrest. A judgment of conviction shall contain an order for payment of the amount of the criminal justice

In arguing that the amount of the criminal assessment fee is without support in the record, Russell relies on *Pacheco, supra*, 187 Cal.App.4th 1392.   In that case, a booking fee was imposed on the defendant as a condition of probation.  Although the record was silent regarding the statutory support for imposition of the fee, the reviewing court determined that it was imposed under either Government Code section 29550 or Government Code section 29550.2.  (*Id.* at pp. 1399–1400.)  The court observed:  "[A] prerequisite to the imposition of a booking fee, *whether under Government Code section 29550, subdivision (c) or Government Code section 29550.2*, is a finding, whether express or implied, of the defendant's ability to pay.  Such a finding must be supported by substantial evidence.  Further, a booking fee must not exceed the actual administrative costs of booking, as further defined in the relevant statutes.  There is no evidence in this record of either Pacheco's ability to pay a booking fee, particularly as a condition of probation, or of the actual administrative costs of his booking.  Accordingly, the $259.50 criminal justice administration or booking fee cannot stand."  (*Pacheco,* at p. 1400, italics added.)

*Pacheco* is distinguishable.  Government Code sections 29550 and 29550.2, which were at issue in *Pacheco,* include specific requirements regarding ability to pay and individualized consideration of actual administrative costs.[6]  As is clear from its plain

---

administration fee by the convicted person, and execution shall be issued on the order in the same manner as a judgment in a civil action, but the order shall not be enforceable by contempt."

[6] Government Code section 29550, subdivision (c), provides:  "Any county whose officer or agent arrests a person is entitled to recover from the arrested person a criminal justice administration fee for administrative costs it incurs in conjunction with the arrest if the person is convicted of any criminal offense related to the arrest, whether or not it is the offense for which the person was originally booked.  The fee which the county is entitled to recover pursuant to this subdivision *shall not exceed the actual administrative costs*, including applicable overhead costs incurred in booking or otherwise processing arrested persons."  (Italics added.)  Government Code section 29550, subdivision (d), provides in relevant part:  "When the court has been notified in a manner specified by the court that a criminal justice administration fee is due the agency:  [¶] . . . [¶] (2) The court shall, as a condition of probation, order the convicted person, *based on his or her ability*

17

language, Government Code section 29550.1 includes no requirement of individual consideration of the actual administrative costs of booking or the defendant's ability to pay. In fact, at the time of sentencing in this case, former subdivision (a)(2) of Government Code section 29550 stated: "Any increase in a fee charged pursuant to this section [for booking and processing arrested persons] shall be adopted by a county prior to the beginning of its fiscal year and may be adopted only after the county has provided each city [and other specified entities] 45 days written notice of a public meeting held pursuant to Section 54952.2 on the fee increase and the county has conducted the public meeting." (Stats. 2006, ch. 78, § 2, p. 1548.) This provision suggested that the "actual administrative costs" of receiving a person arrested by an employee of a city and brought to the county jail for booking were set at a public meeting and did not necessarily require individual consideration each time such a fee was imposed upon a defendant, pursuant to Government Code section 29550.1.

In this case, the preprinted "Local Court Form – Mandatory / SCR-210 Rev 10/3/11" provided for imposition of a "$564 CJA." We can reasonably infer that, at the time of judgment, the County of Contra Costa had set the criminal assessment fee at $564. There is nothing in the record to indicate that the amount of the standardized fee was not $564. We will not presume otherwise. (Evid. Code, § 664 [presumption "that

_____

*to pay*, to reimburse the county for the criminal justice administration fee, including applicable overhead costs." (Italics added.) Government Code section 29550.2, subdivision (a), provides: "Any person booked into a county jail pursuant to any arrest by any governmental entity not specified in Section 29550 or 29550.1 is subject to a criminal justice administration fee for administration costs incurred in conjunction with the arresting and booking if the person is convicted of any criminal offense relating to the arrest and booking. The fee which the county is entitled to recover pursuant to this subdivision *shall not exceed the actual administrative costs*, . . . incurred in booking or otherwise processing arrested persons. *If the person has the ability to pay*, a judgment of conviction shall contain an order for payment of the amount of the criminal justice administration fee by the convicted person, and execution shall be issued on the order in the same manner as a judgment in a civil action, but the order shall not be enforceable by contempt. The court shall, as a condition of probation, order the convicted person to reimburse the county for the criminal justice administration fee." (Italics added.)

18

official duty has been regularly performed"]; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [" 'judgment or order of the lower court is *presumed correct . . .* and error must be affirmatively shown' "].) Russell has not shown any error in the imposition of the criminal assessment fee.

### III. DISPOSITION

The attorney fees order is reversed. On remand, the court may hold a hearing to determine, in accordance with the applicable statutes, Russell's ability to pay attorney fees before imposing them. The judgment is further modified to strike the prior prison term enhancements (§ 667.5, subd. (b)) and the third prior conviction enhancement (§ 11370.2, subd. (a)). The judgment is accordingly reversed in part and affirmed in part, as so modified.

_____

Bruiniers, J.

We concur:

_____

Jones, P. J.

_____

Simons, J.